[Crim. No. 5261. In Bank. Feb. 8, 1952.]

In re GILBERT F. COLLIE, on Habeas Corpus.

Gilbert F. Collie, in pro. per., and Robert K. Barber, under appointment by the Supreme Court, for Petitioner.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Respondent.

GIBSON, C. J.—Following his conviction of first degree murder, petitioner was sentenced to death on January 11, 1932. While he was awaiting execution at San Quentin prison, a jury found that he had become insane, and he was transferred to the Mendocino State Hospital. Some time later the hospital's psychiatric staff reported that petitioner had regained his reason and recommended commutation of sentence to life imprisonment, stating that he would probably become insane again if he were returned to condemned row. In 1934 Governor Rolph commuted the sentence to life imprisonment "upon the condition and with the restriction" that petitioner be confined in San Quentin "for the remainder of his natural life, and that he shall never be eligible for release upon parole, nor shall his release upon parole ever be authorized or granted by any authority of the State of California." By this application for writ of habeas corpus, petitioner, who is still confined in prison, seeks a determination of the validity of the condition thus imposed.

Since the commutation states that petitioner "shall never be eligible for parole," it acts as an immediate restraint on him and prevents him from applying for parole, as may ordinarily be done after seven years' confinement by a prisoner who is serving a life sentence. (See Pen. Code, § 3046.) The writ of habeas corpus, therefore, is a proper remedy to determine whether the condition which purports to deprive petitioner of the right to seek parole is valid. (Pen. Code, § 1473; see In re Bramble, 31 Cal.2d 43, 53-54 [187 P.2d 411]; In re Seeley, 29 Cal.2d 294, 298-299, 303 [176 P.2d 24]; In re Stewart, 24 Cal.2d 344, 345-346 [149 P.2d 689].)

The governor's power to commute sentences is derived from article VII, section 1, of the Constitution which provides that

he "shall have the power to grant reprieves, pardons, and commutations of sentence, after conviction, for all offenses except treason and cases of impeachment, upon such conditions, and with such restrictions and limitations, as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons."

 The terms of the commutation purport to prevent a subsequent governor from granting petitioner permission to apply for parole, but it is clear that one governor has no power to prohibit his successors from changing a commutation of sentence or modifying its provisions. It is the general rule that one legislative body cannot limit or restrict its own power or that of subsequent Legislatures and that the act of one Legislature does not bind its successors. (*Department of Water & Power* v. *Vroman*, 218 Cal. 206, 218-219 [22 P.2d 698] ; *Thompson* v. *Board of Trustees*, 144 Cal. 281, 283 [77 P. 951] ; *San Francisco Gas Light Co.* v. *Dunn*, 62 Cal. 580, 584-585 ; *United Milk Producers* v. *Cecil*, 47 Cal.App.2d 758, 764-765 [118 P.2d 830] ; see *Wills* v. *Los Angeles*, 209 Cal. 448, 451-452 [287 P. 962, 69 A.L.R. 1044].) A similar rule should apply to the head of the executive branch of state government. Accordingly, the present commutation cannot be given effect as a restriction on the power of later governors to grant further executive clemency.

 The remaining question is whether the commutation conditions which deprive petitioner of the privilege of applying for parole are invalid as an interference with the Legislature's power over prisons and paroles. The Legislature is authorized by the Constitution to regulate prisons and has implied power to prescribe the terms and conditions of parole. (See Const., art. X, §§ 2, 5, 7.) General regulations relating to parole have been enacted in the exercise of this power (Pen. Code, § 3040 et seq.), but it does not appear that there was any intent to deprive the governor of the power to withhold parole upon commutation of a death sentence. In the absence of a clear expression of such intent, the statutory provisions should not be considered as an attempt to interfere with the governor's power, and, therefore, we need not determine whether the Legislature could constitutionally do so. A commutation is in the nature of a favor which may be withheld entirely or granted upon such reasonable conditions, restrictions and limitations as the governor may think proper. (*Ex parte Kelly*, 155 Cal. 39, 41 [99 P. 368,

20 L.R.A.N.S. 337].) In view of the circumstances, we cannot say that the condition imposed here is unreasonable.

The order to show cause is discharged, and the petition is denied.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied March 6, 1952.