[Civ. No. 20774. First Dist., Div. Two. Mar. 26, 1963.]

PAUL E. MORSE, Plaintiff and Respondent, v. E. A. ROBEY & COMPANY, INC. et al., Defendants and Appellants.

J. D. Cooper and Phil N. Crawford for Defendants and Appellants.

John G. Evans and Harold C. Brown as Amici Curiae on behalf of Defendants and Appellants.

Brown, Kellogg & Taber and Heber James Brown for Plaintiff and Respondent.

AGEE, J.—Defendants appeal from a judgment decreeing that they have no right, title or interest in or to any of the subject property and ordering them to remove a partially

completed commercial concessions building which they were in the process of erecting thereon. The defendants own adjoining property upon which they conduct a resort business. Their attempt to erect the concessions building on the subject property precipitated this action.

Otherwise, the facts and circumstances are the same as those in *Morse* v. *Miller* (1954) 128 Cal.App.2d 237 [275 P.2d 545], wherein a judgment in favor of the same plaintiff was affirmed. The defendants herein are the successors in interest of the defendants in the prior action. The subject property is part of the "beach property" involved in said action. Defendants hold the record title.

The parties agree that the principle of res judicata applies and that the holdings in *Morse* v. *Miller, supra,* constitute the law of the case on all of the points adjudicated therein. The present controversy centers upon the proper interpretation and legal effect of the judgment in the prior action.

The subject property is located on the easterly shore of Clear Lake, in Lake County, California. According to the scaled map introduced in evidence, the property has a lake front line running northerly and southerly for a distance of approximately 350 feet. It extends back from this line in an easterly direction to "Lakeshore Drive," a distance of approximately 140 feet on the northerly side and 180 feet on the southerly side. This roadway is approximately parallel to the lake front line. The remainder of the parcel is between the lake front line and the low water line.

Plaintiff has sued herein, as he did in the prior action, as the owner of a lot having a private easement in the subject property and as a representative both of the general public and of the owners of other lots having the same private easement. The respective rights of the lot owners and of the public are both based upon dedication by defendants' predecessors in interest.

Appellants do not question that the judgment in *Morse* v. *Miller, supra,* decrees that the lot owners have an easement in the subject property consisting of the right to use said property for beach purposes. They do, however, question the sufficiency of the evidence to support the trial court's finding herein that "the erection, maintaining and proposed use of said [concessions] building does and will interfere with the rights of the said lot owners in the exercise of their said easement. . . ." However, in view of our decision herein as

to the rights of the public, it is unnecessary to discuss the evidence which supports this finding.

The rights of the public are based upon the following provision in the *Morse* v. *Miller* judgment: "That said real property of the defendants has been dedicated and is dedicated to the public for an athletic field[1] and beach." (See *Morse* v. *Miller, supra*, p. 243.) The pleadings, findings, conclusions, and judgment in that action treat the rights of the public and the private rights of the lot owners as separate and distinct issues. The trial court in this action has done likewise. We point this out because the appellants herein have attempted to treat these respective rights as being coextensive.

▆▆ The controversy as to the public's rights centers upon the following portion of the judgment in the instant action: "That defendants . . . have no right, title or interest in or to any of said property and neither of them has any right to exercise any control over said property or to use any of said property in any manner whatsoever." The basis of this holding is that the property was dedicated to the public for use as a beach and that defendants' predecessors in interest had thereby divested themselves of the fee.

The case law in California supports the conclusion that the effect of the dedication herein was to transfer the fee to the public. Two of these cases involve public parks, which are obviously analogous to a public beach.

In *Washington Blvd. Beach Co.* v. *City of Los Angeles*, 38 Cal.App.2d 135 [100 P.2d 828], the defendant city was held to be the owner in fee simple of a certain parcel of real property known as "The Strand" and which had been dedicated for public use. This parcel consisted of a stretch of ocean beach running along the high tide line and extending inland, to the east, for a distance of 200 feet. Just as in the instant case, plaintiff's predecessor in interest was a subdivider who was desirous of selling lots on the property adjoining the beach.

The subdivider recorded a map on which was the endorsement that it " 'dedicated for public use the streets, avenues, "The Strand" and alleys as shown on this map.' " An acceptance of this offer of dedication was endorsed on the map, as follows: " 'That all streets shown upon said map (surveyed September, 1902) and therein offered for dedication be and the same are hereby accepted as public streets.' " There

---

[1] The "athletic field" is not a part of the property involved herein.

was no specific reference to "The Strand" in the acceptance.

Plaintiff attempted to segregate the beach property into two parts by restricting "The Strand" to a 55-foot strip running along the easterly side of said property, adjacent to the building lots. The court noted that there was nothing on the face of the map to show any such segregation and held that the entire parcel was included within the offer of dedication. It further held that there had been an implied acceptance of "The Strand" by the public and that the public had continuously used it as a public park ever since the map was recorded.

The judgment quieting title to the beach property in the defendant city was affirmed, the appellate court stating: "The finding of the trial court that the City of Los Angeles is the owner *in fee simple* of the real property, the title to which is in dispute, was clearly sustained by the evidence." (Italics ours.)

Appellants attempt to distinguish the foregoing decision upon the grounds (1) that it involved an express offer of dedication, and (2) that, while there was no formal acceptance of the offer, the defendant city "spent many thousands of dollars improving the land and fitting it for park purposes." We do not see the relevancy of these distinctions.

An offer of dedication may be either express or implied. "[E]xcept for the requirements as to proof, emphasis on the distinction would seem to have no legal significance." (15 Cal.Jur.2d, Dedication, § 8, p. 265.) As to the second ground, we know of no requirement that a public body must expend money to develop the dedicated property in order to effect a valid acceptance of the offer of dedication. Moreover, there is no issue in the instant case as to whether there was an executed dedication of the subject property. This was determined in *Morse* v. *Miller, supra*. The question herein is whether the dedication effected a transfer of the fee or only an easement.

We think *Washington, supra,* is directly in point. There the court stated, at page 138, that the evidence showed "that plaintiff's predecessor offered to dedicate 'The Strand' as a public park and that said offer was accepted." Thus, the offer and acceptance constituted an executed dedication. As we have seen, this was held to effect a transfer of the fee to the public.

The *Washington* case was cited with approval in *Taylor* v. *Continental Southern Corp.*, 131 Cal.App.2d 267 [280 P.2d 514]. In that case the subject property had been used for

many years as a public park. The original owner had deeded it to the City of Long Beach upon the express condition that it "be used exclusively as and for a public park." The opinion states: "The deed clearly is a conveyance upon condition subsequent, a reentry clause being unnecessary. . . . This conveyance left in the grantor what is commonly known in legal parlance as a possibility of reverter." Plaintiff succeeded to this contingent interest of the grantor. On December 18, 1944, she and the defendant entered into an oil and gas lease of any right, title or interest which she then had or might thereafter acquire in the subject property. On March 22, 1948, the city and the defendant entered into a counterpart of the same lease. Defendant paid royalties to the city but refused to pay any to plaintiff.

Plaintiff was denied any recovery in the action which followed, the court stating, at page 274: "The general rule is that a dedication for park purposes passes a fee simple to the grantee (*Washington Blvd. Beach Co.* v. *City of Los Angeles,* 38 Cal.App.2d 135, 138 [100 P.2d 828]). . . . And a conveyance for park use not only carries all oil and minerals, but also the right to develop same in any manner not inconsistent with use of the surface of the land for park purposes."

As stated in another public park case, *Archer* v. *Salinas City,* 93 Cal. 43 [28 P. 839, 16 L.R.A. 145], at p. 51: "Dedication is an ultimate fact, dependent upon the establishment of other facts, and is to be found from the evidence presented to the court. [Citation.] It results from the acts of the owner of the land, coupled with the intent with which he does those acts. It may be express, and completed by a single act, as when the land is dedicated by deed, or it may be implied from a series of acts, . . . Whenever the dedication is complete, the property thereby becomes public property, and the owner loses all control over it or right to its use. . . . The property dedicated has become public property, impressed with the use for which it was dedicated. . . ."

In *Slavich* v. *Hamilton,* 201 Cal. 299, 306 [257 P. 60], the Supreme Court said: "But, if the dedication of the property for park purposes was complete in the first instance, the property thereby became public property, and the owners lost all control over it. If the dedication was complete by their acts, *whether express or implied,* it was thereafter irrevocable by them, and the effect of such dedication cannot be qualified by any act or declaration thereafter made on their part. The

property dedicated has become public property, impressed with the use for which it was dedicated." (Italics ours.)

We likewise are of the opinion that the subject property herein has become public property, impressed by the use for beach purposes.

▮ The conclusion we have reached is not weakened by the language in *Morse* v. *Miller, supra,* that "[s]aid judgment [therein] is, of course, to be construed as giving the right to use the beach property only for beach purposes. . . ." This language only indicates that the property was "impressed with the use for which it was dedicated." (*Archer* v. *Salinas City, supra,* 51; *Slavich* v. *Hamilton, supra,* 306.) The court's comment simply declares the rule that the public must not use the property for anything other than a beach. It does not say that the public has only an easement in the property.

▮ Appellants call attention to a statement by respondent's counsel, in his brief to the trial court in *Morse* v. *Miller, supra,* that "[p]laintiff prosecuting this action for and as a member of the general public, does not claim title to the property." Appellants state that it was thus "conceded that Miller owned the property." We would be a little more realistic. The actual client, Morse, was primarily interested in establishing a private easement in the subject property for use as a beach. His counsel was desirous of obtaining this result.

The court is not bound by any such "concession" and this would be particularly true in the instant case, where the rights of the public are involved. In *Bradley* v. *Clark,* 133 Cal. 196, 209-210 [65 P. 395], the court stated: "Finally, it is urged that it is conceded by appellant that the defendant's answers would tend to criminate him, and that our inquiry need go no further than this concession; or in other words, that we are bound to accept as matter of law, and as a rule of evidence, a concession as to the law made by appellant's attorney, no matter how faulty that concession may be." This contention was rejected, the court stating: "[W]e are not bound by such concession, our duty being to declare the law as it is, and not as either appellant or respondent may assume it to be; . . ."

The *Bradley* case was cited with approval by our Supreme Court in *Desny* v. *Wilder,* 46 Cal.2d 715 [299 P.2d 257], wherein it was stated as follows: "It may be that plaintiff's concessions and arguments, in the light of the pleadings and evidence, are intended to suggest that there is some nebulous middle area between an abstract idea and a literary composition, wherein the idea has been cast in 'concrete' form but

not 'concrete' enough to constitute a literary property. . . . This court, of course, is not bound to accept concessions of parties as establishing the law applicable to a case." (Pp. 728-729.) (Also to the same effect: *Heifetz* v. *Bank of America,* 147 Cal.App.2d 776, 781 [305 P.2d 979].)

██ Appellants say that it is inequitable to enforce the judgment in *Morse* v. *Miller, supra,* as to the subject property in the instant action and not as to other property which was also included in the prior action. No authority is cited for this proposition and we find it to be without merit.

██ Appellants place some significance on the existence of an old bathhouse which had been located on or near the site of the existing concessions building. The bathhouse was torn down and removed by the Millers in 1938, shortly after they acquired the property. This left the property clear of any structures. As we have held herein, the judgment in *Morse* v. *Miller, supra,* had the effect of establishing the fee title in the public. Thereafter, no one had the right to erect a structure upon the premises without proper authorization.

The entire area of the subject property was included in the judgment. There was no reservation or exception of any portion thereof. We find no merit in appellants' contention that they should now be allowed to place the new structure on the site of the old bathhouse, which had been removed 14 years before the rendition of the judgment in *Morse* v. *Miller, supra.*

██ In line with the foregoing contention, appellants set up in their answer to respondent's complaint that the building erected by them was located on the "non-beach portion of said property" and would therefore not be an interference with the use of the property for beach purposes.

The trial court rejected this contention and made the following finding: "That it is not true . . . that said real property consists of a beach and a nonbeach portion, but that it is true that *all* of said property . . . is a beach. . . ." (Italics ours.)

This finding is supported by substantial evidence, which includes photographs of the subject property. These very graphically show the conditions when several hundred bathers are standing, sitting, or lying on the beach and visibly demonstrate that *all* of the subject property is needed for beach purposes. This is consistent with our conclusion that the dedication made herein is of all of said property and not just the portion immediately adjacent to the water.

There are no other points raised by appellants which merit discussion. The judgment is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.